Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 241957 and number 251186, Luz Stella Buckley v. Pamela J. Bondi. At this time, would counsel for the petitioner come up to the podium and introduce himself on the record to begin? Good morning, Your Honor. Stephen Bourne for the petitioner. Good morning. The origin of this case is my client, Luz Stella Buckley, arrived in the United States as a foreign national last on 2005. She has since married this gentleman behind me, Christopher Buckley, and the two children that she has are Laura and Enrique, hence her son, a U.S. citizen over 21, did a petition for her. That petition was heard before the immigration court in Boston, and the judge found after the trial that she had complied completely with all the requisites to become a legal permanent resident. However, as a matter of discretion, she denied the case based on two criminal charges, one from 1991, a shoplifting charge that was dismissed, and one from 2009, which was assault and battery with a deadly weapon. You have limited time, so we don't have jurisdiction to review the discretionary determination, but we do have jurisdiction to review legal errors. So if you were to say to me, the legal error is, fill in that sentence, the legal error is? Thank you very much, Your Honor. In order to exercise discretion, one must consider, under well-established precedent, prejudice to the petitioner. One must show family ties and length of residence in the United States. Those are positive equities that must be weighed and considered. In this case, other than mentioning in one boilerplate sentence that those are considerations, the judge emphasized entirely the serious criminal incident, that it happened 30, and this was a radical misunderstanding of the proper procedure in determining whether discretion should be exercised in a negative way. So I mean, it strikes me there are multiple problems potentially here. So one is, these are serious criminal charges, and in fact, there were no convictions, and they were, one was shoplifting of $100, and one was a non-proven assault charge. So I guess one problem you're telling me is, I mean, we can't review the facts, we can't review the exercise of discretion, and so to say that the legal error is just the explanation of the discretion exercise wasn't good enough, I'm not sure that fits illegal. Now, you say something else, though, that I thought was interesting that I'd like you to expand upon, which was that there was no remorse, lack of remorse was a major thing that the IJ seized upon as an aggravating factor, and when I read the very brief hearing in this case, there was no questioning by anyone about remorse. Is that a legal problem? Yes, Your Honor. Judges are also required to give the petitioner a chance to explain or deny, and it is the obligation of an immigration judge to explore those considerations at length. Most judges do it. I've been practicing in the Immigration Court for 38 years. Do you think that was a legal failure here? I think so. If she's going to deny on that basis, she has to give the petitioner at least a chance to explain it. In any event, she found the petitioner credible. The petitioner said that the shoplifting incident was a misunderstanding, and we have to accept that at face value. Further, if she had been convicted, paradoxically, it would be irrelevant, it wouldn't be a bar to adjustment under the petty offense exception. So somewhat absurdly, if she had been convicted, there would have been absolutely no question that it could not be considered. Secondly, the incident with the soft end of a dog leash when she discovered drugs in her 16-year-old daughter's backpack, it was actually maybe covered by the parental privilege in Massachusetts since there was no injury whatsoever alleged. All right. So if we take as a potential legal issue here the failure to pursue the record, to develop the record sufficiently for the judge to then make these findings, that wasn't raised to the BIA, right? Because no brief was filed on time, and they denied the brief, and you didn't, that's not been an issue on appeal of whether at least the BIA's denial of the brief was error. What is on appeal is the motion to reopen, right? Yes. Do you think in the motion to reopen that you raised this issue of the failure to develop the record? Yes, Your Honor. We brought a motion to reopen before the BIA, and they summarily rejected it. One issue in this case is the brief was, may I have? You have five minutes. Thank you. Another issue in this case is that my predecessor, he missed the brief deadline by a couple weeks, and he alleged in an affidavit inadvertence of counsel, not any fault of the client. And in that case, the BIA summarily rejected the motion to reopen, stating that there was no prejudice shown. A brief had been submitted along with the motion to file late. Was the brief attached to the motion to reopen? Yes, there was a brief attached to the motion to reopen. At some point, we received the brief is being returned, but they had it. Two separate things. The brief is returned when you file the motion to late file, and you have to submit your brief with that. Yes. And then when they reject that, they return it to you. That happened, right? Yes, that happened. And you filed, somebody filed a motion to reopen with the BIA, and I'm looking at that. That has exhibits A through E. None of those are the brief. Correct, Your Honor, but I believe we mentioned in our reply brief, the first page, our rebuttal, that the brief had been submitted, and it is in one of the appendices. I don't have the exact site. So I guess even in the motion to reopen, its text itself, you do reference the arguments. Now it's pretty short, but you do say the immigration judge failed to develop the record as required. Yes. That's an issue we just discussed, right? Yes. Failed to give the respondent an opportunity to present corroborating evidence. That would be a related issue, right? Mm-hmm. And you mentioned those in the motion to reopen. Yes. And another related issue is should the BIA, under their own standards of law, accepted the motion to accept, the motion to reopen. There's a case called Lozada. All the steps of Lozada were met. It was rejected because, allegedly, we were unable to show prejudice, meaning a likelihood of success on the merits. It's quite the contrary. The decision of the judge was patently unfair. The positive equities were not weighed. There was no consideration of prejudice to the petitioner. So a number of flaws were raised. There was a chance of success on the merits, just in the most superficial glance. And they said, just summarily, that there wasn't. I mean, so assuming that the brief wasn't filed with the motion to reopen, you do list what the arguments would be. I guess you don't go on with another sentence to say, this is why they prejudiced you. But I mean, in some sense, obviously, you're making the arguments because you think you should win because they prejudice you. I mean, you do identify the arguments. So that's point one. Point two is this idea that you failed Lozada because you said, or your client said, that she failed to file an appeal when, in fact, it was a brief. That's the other argument that's made in support of denying the motion to reopen. What is your response to that? I think that was, in context, a typographical type of error that was, in context, clearly discernible. The fact is that the appeal itself was filed in a timely fashion within 30 days of the judge's decision. But the briefing schedule was not complied with. It was a few weeks late. When I look at that filing, was that done by your office or was that done by your client? It was done by my colleague through the motion to accept late filing. And the Lozada bar complaint was done by the client. Ah, that's it. I think it does present a significant issue of law insofar as the judge's language in considering one dismissed misdemeanor charge and one criminal incident alleged to be, but in fact that is arguably not a crime at all, and was also dismissed. She considered those, in her own language, two serious criminal acts. There's no evidence in the record whatsoever that either one was a serious criminal act. So the basis of her decision, and then on the other side, to not consider... Robert, is that a factual finding? Now I may disagree with it, but I don't know that we have jurisdiction to consider factual findings made in an adjustment of status. Well, I think it's a characterization of what were undisputed facts. The undisputed facts are, as I've stated, that there was a soft end of a dog leash, a parental privilege, there was no injury, and there was a dismissed misunderstanding in Tennessee in 1991. I mean, I think your real problem is you've told us and developed more facts before us here than ever were developed at that hearing by either the IJ or by counsel. That's a fair comment, Your Honor, but I have to say also, based on 38 years of experience in immigration court every day, that no one could have anticipated that the judge was going to hold up this dismissed, shoplifting, charge of petty offense from 30 years before, and fining marijuana on her daughters, and denying. So my other predecessor was somewhat like a deer in the headlights. Are you really denying? And I agree that she could have, but then the judge herself, under the legal standard for judges, if you're going to deny indiscretion, you have to give the petitioner a chance, we call them the respondent in immigration court, a chance to explain or deny. And that wasn't done. Other than there was a misunderstanding, and I found drugs in my daughter's backpack, which is sufficient. Just to be precise, and I guess this is to set up for your friend here, but so this is what the IJ said. She expressed no remorse whatsoever for having used a jog leash to strike her child and minimize the conduct saying that she did not hit her with the metal portion of the leash. She did not acknowledge responsibility for the incident. She did not demonstrate to the court what she had learned from engaging with the criminal trial system. Was any of that asked about at the hearing? No, it wasn't. And if the judge was going to make a finding on discretion on that basis, she should have given the person a chance. How do you feel? What happened in the criminal court? Did that change your conduct? Do you get along with your daughter? Is your daughter's here, your honor? This is a citizen family. They're about to lose their mother and their wife. Thank you. Thank you, counsel. At this time, would counsel for the respondent please introduce herself on the record to  Good morning, your honors. May it please the court, Alison Frayer for the Attorney General. In docket number 24 of 1957, the court should dismiss the petition for review for lack of jurisdiction over the agency's discretionary denial of adjustment of status. And in docket number 25, 1186, the court should deny the petition for review for two independently dispositive reasons. First, for failure to comply with Lozada, and second, for failure to demonstrate. How do they fail to comply with Lozada? The petitioner presented an affidavit and a bar complaint in which she inaccurately stated that the attorney failed to file an appeal as opposed to the brief. One reads that in context. Can't one understand what's being said there? That is for the State Bar of Massachusetts, which doesn't have the entire context necessarily before it. The complaint needs to be accurate so the State Bar knows what it's looking at and what petitioner is complaining about. This court has held that the affidavit needs to be detailed and obviously those details need to be correct. Moreover, the petitioner failed to show prejudice on the IAC claim before the board because the brief is not in the record. Saying it doesn't make it so. The board never saw it. They identify what the arguments are in the motion to reopen and frankly, I see prejudice. I see a hearing that was a complete malfunction as I view it. So what you're asking us to do, just so I'm clear what you're asking us to do here, is to take a hearing where it went completely, in my mind, off the rails because the IJ relies on things that were not said, were not asked about. And then the answer is, well, one lawyer didn't ask the right questions, one lawyer didn't file a brief, and then on appeal, she should be removed and we shouldn't give her a chance because the word appeal was used instead of the word brief. That's the position of the government. Petitioner has meant, well basically yes, but petitioner has never argued that the attorney before the IJ who works for the same law firm that has represented her before all this litigation, she has never sued the attorney before the IJ was ineffective. And the attorney there had the opportunity to ask all the questions she wanted. She had all the time. Just on that, is there some list, if I'm an attorney for the petitioner, is there a list of things that an IJ will use as aggravating factors such that I know ex ante exactly what those are? Yes. Matter that I from 1970. And there was remorse as a factor in a criminal case? I'm sorry? Remorse is a factor? Yes, and rehabilitation. They have been for decades. The petitioner's attorney didn't ask any questions about the arrests initially. Does that relieve the obligation of the IJ to establish the record? We have cases that say the IJ also has a responsibility whether or not the petitioner is represented to establish the record such that the IJ can make findings, such that we can review those findings. Yes, although here it's not clear you would have jurisdiction to review the findings, but you can review whether or not they were made for sure. So, yes, but where the attorney, where the alien is represented, it's not as the... We said in Varela-Chavarria, note six, that it doesn't matter whether the person's represented. So, this obligation still rests with the IJ? It does, but she fulfilled that here where the attorney for the petitioner rested her case without asking any questions about the arrests. Right, but there's a thing that goes on here when the IJ then says, okay, thank you all, and goes back and then writes an opinion that focuses on lack of remorse. How do we know that she wasn't remorseful, she wasn't asked by anyone? And then it becomes the centerpiece of the decision. Because the IJ, when the petitioner rested after not asking any questions about the arrests, the IJ did intervene and said, really, no question about the arrests? Focus on the arrests and focus on the remorse. So that becomes the centerpiece, I read it out loud, that becomes the centerpiece of the IJ's decision, her lack of remorse for these prior incidents. What in the record says this woman was or was not remorseful? Nothing, there's no evidence either way. But she was given the opportunity... So the finding is she wasn't. The finding is she was not remorseful. What can you point me to that says she was not remorseful? Nothing. I read it as a finding that there was no evidence of remorse, but I see what you mean. The phrase lack of remorse is in the IJ's decision. So... No remorse. She did not. She was given the opportunity to testify about the incident where she hit her daughter with a dog leash. She testified about it. She said she didn't hit her with the metal end of the leash and said nothing else about it. She never said it was a mistake. She never said she was sorry. She never said that's the only time she did it. How would she know that mattered? How would you not? Where you have been arrested for child abuse and you're asking for an active administrative... She was not convicted. She was not convicted because it was dismissed after she served probation, yeah. So she was arrested. She went to court. She got probation. She served probation. The charge was dismissed. She knew all of those things had happened. And she testified all of those things happened. Yes. And... Which is what she was asked. So she answered the question. She did. But if... You should have made a speech on the side. Well, let me be clear, just so you understand, I am remorseful. I'm just telling you that. No one's asked me, but I'm just going to tell you that. That's usually what people do. If you're asking for an active administrative grace, you need to put your best foot forward and ignoring whether you think that act was a mistake or somehow okay or how you feel about that is going to be important. And Petitioner knew that the arrests were going to be important when DHS told Petitioner's counsel about the arrests months before the individual hearing. Petitioner's counsel wasn't aware of the arrests until DHS let him know that there had been pops on the background check. And so... It seems very problematic to make an affirmative finding of lack of remorse when there are zero words about that or questions about that. And, in fact, if you go back to the shoplifting from 35 years ago, I think she says, well, it was a misunderstanding. It didn't happen. Even harder to express remorse there. I don't read the agency's remorse of having anything to do with the shoplifting conviction because she did credibly testify it was a misunderstanding. Here's the bottom line of the whole opinion. While the criminal instances are far in the past, shoplifting was in the 90s, assault and battery was in 2009, the lack of any remorse in the fact that there were two criminal incidents does not compel a conclusion that the respondent will refrain from future criminal acts. I mean, so you have two charges, neither of which led to convictions, and then this lack of remorse, which was not asked about, is the whole basis for this decision. And there's a burden on the I.J. to build a record. And so this I.J. asks no questions. The lawyer didn't ask any questions either. Shame on the lawyer. Shame on the lawyer. Shame on the I.J. Okay. Then the I.J. goes back and then picks out a nonexistent thing and makes it the centerpiece of the opinion, and this is supposed to result in removal. I mean, that just seems, Kafka asked to be frank. Petitioner bears the burden of proof, and she bears the burden of demonstrating that she's a desirable long-term resident of the United States. She knows those things going in, or her attorney should. Can I ask you just a question about that, about what her attorney should have known? But for the procedural flaw that you have identified with the bar complaint, does she have a valid Lozada claim? Well, no, because she didn't show prejudice. But I would say, but for that error, it's... Okay. She didn't show prejudice, but we're talking about whether counsel brought out whether she was remorseful or not. So I'd like to ask the question again. Go ahead. With respect to whether counsel should have questioned her better before the I.J., she's never raised that claim. Whether it would be ineffective would be up to the agency to say in the first instance. She's never raised that claim. She's been represented by the same law firm throughout, so I think there might be some conflicted interests there. And I don't... But that claim has never been raised, so I can't say. So has this been one law firm the entire time? Yeah. I.J. Board here today. So we're asking that law firm to go into a great deal about how they were ineffective and the idea is we're not going to give this woman a chance because these lawyers at every turn who are all part of the same group seem to fall down and haven't done a good enough job to fall on the sword. Is that what I'm understanding what you're saying? A little bit, yes. This court recognized that where it's the same firm, there was a case, Poonzolan, in 2004 or 2009, in which the alien had the same attorneys all the way through. And this court recognized the conflicted interests that the law firm might have and actually sent its opinion to the state disciplinary authorities in that case. I'm not asking for that here, but this court has recognized that. What did it say in that case about what should happen to the person who's not really responsible for those conflicts? Well, the petition for review was denied, so I suppose she bore the brunt of it. Because? That was a prejudice case because the petitioner had not shown prejudice. And so here, I mean, the argument seems to be in the motion to reopen. The lawyer failed because they did not exhaust the failure of the IJ to develop the record. That seems to be in the motion to reopen. And your position is that there needed to be another sentence that said, and that would have prejudiced me because if the IJ had asked questions, I would have said I was remorseful? Correct, because we can't assume petitioner is where she hasn't said either way. So if she wants us to assume that she is remorseful, or that this is the only time she's done this, or anything else, she has to say that even in an affidavit. And that's not too much work to ask someone who is requesting an act of administrative grace and permanent residence and eventual citizenship in the United States to fill out an affidavit saying, I am remorseful, this was a mistake, it's the only time I've done it, no one asked me, but this is what I would have said had I been asked. She couldn't do that. And the board can't assume what that affidavit would say if they're not looking at it. Thank you. Your time is up. Thank you. Thank you, counsel. That concludes argument in this case.